**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CORBETT MCCALEB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  3:11-cv-01049-JPG-PMF** |
| | ) | |
| **MAGID FAHIM,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is Defendant Magid Fahim and Wexford Health Sources, Inc.'s (Doc. 49) motion for summary judgment and Plaintiff Corbett McCaleb's (Doc. 56) response thereto.

McCaleb filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against three Defendants on November 29, 2011.  In its initial screening order, the Court summarized the relevant allegations in the complaint against Defendants Magid Fahim and Wexford Health Sources, Inc. ("Wexford") as follows:

> Plaintiff claims that defendant Fahim, a physician, was deliberately indifferent to a serious medical condition.  More specifically, Plaintiff asserts that while incarcerated at Menard Correctional Center, he sustained a groin hernia.  He informed Defendant Fahim that he was in constant pain and could not stand for more than ten to fifteen minutes because of the pain.  As a result Plaintiff could not participate in outdoor exercise, missed eating some meals, and was unable to get a work assignment.  Defendant Fahim gave the plaintiff ibuprofen and would not order surgery until the hernia became strangulated.
>
> Plaintiff next alleges that Defendants Fahim and Wexford Health Sources, Inc., conspired to cause him harm in that Fahim and Wexford Health Sources, Inc., had a de facto medical treatment policy with the goal of saving money. Plaintiff alleges that Fahim receives a bonus when he stays under his medical budget as set by Wexford Health Services.  As a result of his financial incentive created by Wexford Health Sources, Inc., Fahim will not repair a hernia until it becomes strangulated.

1

Doc. 11 at 1-2.  The Court screened the complaint pursuant to its authority in 28 U.S.C. § 1915A

(§ 1915A) and found that McCaleb stated a claim against Defendant Fahim for deliberate

indifference to serious medical needs and a claim against Defendants Fahim and Wexford for

conspiracy. *See id*. at 2.  The Court severed an unrelated claim against Defendant Rednour into a

new case so he is no longer a Defendant in this case. *See id*. at 2-3.

On January 4, 2013, Defendants Fahim and Wexford filed the instant (Doc. 49) motion

for summary judgment arguing that McCaleb failed to exhaust his administrative remedies.  "A

party may move for summary judgment, identifying each claim or defense--or the part of each

claim or defense--on which summary judgment is sought." FED. R. CIV. P. 56(a).  Summary

judgment is appropriate where "the movant shows that there is no genuine dispute as to any

material fact and that the movant is entitled to a judgment as a matter of law." *Id*. S*ee also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc*., 211

F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See*

*Anderson v. Liberty Lobby, Inc*., 477 U.S.  242, 255 (1986); *Spath*, 211 F.3d at 396.

The Prison Litigation Reform Act ("PLRA") provides as follows:

(a) Applicability of administrative remedies.  No action shall be brought with
respect to prison conditions under section 1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a).  Accordingly, all prison inmates bringing an action under 42 U.S.C. §

1983 with respect to prison conditions, must first exhaust all administrative remedies that may be

available to them before being allowed to proceed with a lawsuit. *See id*; *see also Pavey v.*

*Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d

532, 535 (7th Cir. 1999).   The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The IDOC has a three-step process for non-emergency that prisoners under their jurisdiction are required to follow in order to exhaust administrative remedies.   For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.   At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*.   The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830.   The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB").   After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850.   With regard to prisoners under the control of the IDOC, administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

On March 15, 2011, McCaleb wrote a grievance, referred to as #59-3-11, providing as follows:

> On March 2, 2011, I have been in seg since October 24, 2010, and I have been sitting in a cell that's 5'X10' with another person. There's no room to exercise so my muscle tissue got soft. When I went to the yard to get some exercise, the muscle tissue torn in the groin area, and now I have a "hernia."   Now since it happen[ed] here at Menard, I would like to have it fixed as soon as possible before it gets any bigger.   I have two years left on my sentence, and I'm not going through this like I did in [Dixon] in 2008.   I was in discomfort for six months.   I had my navel-hernia that I had fixed on the streets.   That's not going to happen this time or I'll start legal procedures as soon as I see first [sign] of foul play going on.

Doc. 56-1 at 12-13.  That is how the grievance read when McCaleb submitted the grievance to his counselor in accordance with step one of the grievance process.  The counselor received the grievance on March 16, 2011. *See id*. at 12.

After receiving the grievance from his counselor at the conclusion of step one, McCaleb wrote the following on page 2 of his grievance between March 17 and March 21, 2011:

> I am writing an amendment on this.  On 3/17/2011, I seen the nurse practitioner and she said that there not going to fix me, but I can put you in to see the Medical Director, and you can see what they say.  But nurse practitioner said they will tell you the same thing that I told you.

*Id*. at 12-13 (copy of grievance #59-3-11 reflecting a counselor response dated 3/16/2011 and an amendment that recalls an encounter with the nurse practitioner on 3/17/2011).  The grievance officer received the grievance at step two of the grievance process on March 21, 2011. *See id*. at 12. *See also* Doc. 50-3 at 1 ¶ 4.  At that time, the grievance contained the original text and the first amendment that McCaleb added between March 17 and March 21. *See id*. at 2 ¶ 9-13 (affidavit of Grievance Officer, Jeannette Cowan, referencing records reflecting the presence of the first amendment on grievance #59-3-11 but not the second amendment). *See also* Doc. 56 at 3 ¶¶ 2-3.  The grievance officer denied the grievance on March 21, 2011, and the CAO concurred on April 4, 2011.  *See* Doc. 50-3 at 1 ¶ 6.

After completing step two and receiving his grievance, McCaleb wrote the following amendment on page 2 of the grievance sometime between April 4, 2011 and April 26, 2011:

> I am writing a second amendment on this.  I seen [D]octor [F]ahim.  He tried to push my [intestines] into my scrotum, making my hernia bigger.  I asked him if he was going to fix me, and he said, "No."  He told me if it falls into my scrotum, he'll give me a jockstrap to give me support so I'm not in any discomfort.  I'm in discomfort as of right now and I have been since March 2, 2011.  I [hired an] attorney for this matter because by law you're responsible for my well-being and my health.

Doc. 56-1 at 13.  After adding this second amendment, McCaleb sent the grievance off to the ARB in Springfield, Illinois.  The ARB received the grievance on April 26, 2011. *See id*. at 12, 14.  The ARB denied the grievance on June 9, 2011. *See id*. at 14.

The above facts are undisputed.[1]  Although additional evidence has been received, the instant dispute boils down to a question of law as to whether the steps McCaleb took to exhaust grievance #59-3-11 constitutes proper exhaustion under the PLRA.  Neither party argues that it was proper for McCaleb to add the second amendment that included Defendant Fahim after receiving a denial at step two on April 4, 2011, and before sending the grievance to the ARB on April 26, 2011.  McCaleb, himself, does not urge the Court to consider the second amendment as proof he exhausted his administrative remedies. *See* Doc. 56 at 3 ¶¶ 2-3.

The Court agrees that there is no justification under the IDOC administrative rules for adding an amendment after the grievant receives a response at a particular step.  The rules do not have any process by which amendments to the original grievance are permitted after it has been submitted. *See* 20 Ill.Admin.Code § 504.800 *et seq*.  By amending the grievance after a response is received at a particular step, the grievant takes away the opportunity for the problem to be resolved at the institutional level.   This is problematic because the purpose the exhaustion requirement is "to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *McCoy v. Gilbert*, 270 F.3d

---

[1] There is no issue of fact necessitating an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).

503, 510 (7th Cir. 2002)).  For these reasons, it is clear the second amendment to grievance # 59-3-11 should be disregarded in its entirety.

The parties disagree as to whether grievance #59-3-11 contained sufficient information to identify Defendant Fahim and Wexford at the time that the Grievance Officer and CAO considered the grievance at step two.  The Defendants argue that the grievance only identified an unidentified nurse practitioner, and there was insufficient information provided at that time to conclude that McCaleb exhausted his administrative remedies as to them.  McCaleb argues that IDOC administrative rules provide a mechanism for filing a grievance even when the name of the persons being complained about are not available. *See* 20 Ill.Admin.Code § 504.810(b).

The Court need not decide this issue because it is apparent that McCaleb failed to follow administrative rules before the grievance reached the second step of the grievance process.  The undisputed evidence in this case demonstrates that McCaleb added an amendment to grievance #59-3-11 after he received a response from the counselor at step one on March 16, 2011 and prior to submitting the grievance to the grievance officer at step two of the grievance process. *See* Doc. 56-1 at 12-13.  The first amendment recalls an encounter with a nurse practitioner on March 17, 2011, a day after receiving grievance #59-3-11 from his counselor. *See id*.  The grievance officer's records reflect that the first amendment was included on grievance #59-3-11 at the time of consideration at step two. *See* Doc. 50-3 at 2 ¶ 9-13.

Just like there is no provision in the IDOC administrative rules for amending a grievance after the grievant receives a determination at step two, there is no provision permitting amendments to grievances after receiving a response at step one. *See* 20 Ill.Admin.Code § 504.800 *et seq*.  By amending a grievance after a response is received at a particular step, the grievant essentially skips a step of the exhaustion process by prohibiting the information

provided in the amendment from being considered at the previous step. Each step of the IDOC exhaustion process serves its own purpose and is of equal importance to the others. A grievant may not skip any steps. *See Dole*, 438 F.3d at 809 (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.")) At step one, the counselor is charged with investigating the issue and contacting the persons involved. It is critical that the counselor has all the available information in order to achieve a possible solution to the issue at hand. Therefore, it is improper under the IDOC administrative rules to amend a grievance after receiving a response from the counselor. The proper method to raise new issues after a grievant has new information to report is to file an entirely new grievance. Accordingly, for the same reasons that the second amendment to grievance #59-3-11 was invalid, the first amendment must also be similarly disregarded in its entirely.

Having disregarded both amendments as procedurally invalid, grievance #59-3-11 now consists of its original text as it was received by the counselor on March 16, 2011. The original text of the grievance consists of a complaint regarding a hernia and threat of litigation if it is not treated at Menard before McCaleb's release from prison. *See* Doc. 56-1 at 12-13 (original text concluding on page 2 with the word "foul play going on."). It does name a particular person. *See id*. It is not a complain about the treatment received from any Defendant in this lawsuit or anyone else because it was given to a counselor at step one prior to McCaleb's first visit with medical personnel regarding this hernia. *See id*. This lawsuit is about the insufficiency of the treatment that McCaleb received. Grievance #59-3-11 is, therefore, insufficient to demonstrate proper exhaustion of administrative remedies in this case, as McCaleb insists. As already noted, McCaleb should have filed a new grievance after he visited with Defendant Fahim and it was

apparent that the treatment was not going to meet his needs, rather than attempting amend grievance #59-3-11 on two occasions.

## I.     RECOMMENDATION

For the forgoing reasons, it is recommended that the Defendants' motion for summary judgment (Doc. 49) be granted as follows:

1) It is recommended that the Court find that there is no genuine issue of material fact for an evidentiary hearing on the Defendants' affirmative defense of failure to exhaust administrative remedies;

2) It is recommended that the Court find that the Defendants have demonstrated by preponderance of the evidence that Plaintiff has failed to exhaust his available administrative remedies against them; and

3) It is recommended that Defendants Magid Fahim and Wexford Health Sources, Inc. be dismissed from this lawsuit.

If these recommendations are adopted in their entirety, this case can be closed.

**SO RECOMMENDED.**

**DATED: March 28, 2013.**

_s/ Philip M. Frazier_
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE

8