IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORBETT MCCALEB,<br><br>              Plaintiff,<br><br>       vs.<br><br>MAGID FAHIM, WEXFORD HEALTH SOURCES, INC. and DAVID A. REDNOUR,<br><br>              Defendants. | Case No. 11-cv-1049-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("R & R") (Doc. 58) of Magistrate Judge Philip M. Frazier recommending this Court grant defendants Magid Fahim and Wexford Health Sources, Inc.'s ("Wexford") (collectively "Defendants") motion for summary judgment (Doc 49).  Plaintiff Corbett McCaleb filed an objection (Doc. 59) to the R & R.  For the following reasons, the Court grants Defendants' motion for summary judgment.

1. **Facts**

McCaleb, currently in the custody of the Illinois Department of Corrections ("IDOC") at Hill Correctional Center ("Hill"), brought this civil rights action pursuant to 42 U.S.C. § 1983 on November 29, 2011.  McCaleb alleges that defendant Fahim, a physician at Menard Correctional Center ("Menard"), was deliberately indifferent to McCaleb's serious medical condition while McCaleb was incarcerated at Menard.  Specifically, McCaleb alleges he suffered a groin hernia.  McCaleb informed Fahim he was in constant pain and could not stand for more than ten to fifteen minutes.  The pain prevented McCaleb from participating in outdoor exercise, some meals, and work assignments.  Fahim only prescribed ibuprofen for McCaleb and would not order surgery until the hernia became strangulated.  McCaleb further alleged Wexford's money-

saving policies encouraged Fahim from taking steps necessary to treat McCaleb by providing Fahim with a bonus to avoid the surgery of which McCaleb was in need.

The following facts are undisputed. McCaleb fully exhausted one grievance related to medical treatment for his hernia at Menard. McCaleb filed that grievance, labeled #59-3-11, with the grievance counselor on March 15, 2011, which stated as follows:

> On March 2, 2011, I have been in seg since October 24, 2010, and I have been sitting in a cell that's 5 x 10 with another person. There's no room to exercise. So, my muscle tissue got soft, when I went to the yard to get some exercise the muscle tissue torn in the groin area, and now I have a "hernia." Now since it happen here in Menard C.C. I would like to have it fixed as soon as possible before it gets any bigger. I have two years left on my sentence, and I'm not going through this like I did in Dixon in 2008. I was in discomfort for six months. I had my navel hernia that I had fixed on the streets. That's not going to happen this time or I'll start legal procedures as soon as I see the first [sign] of foul play going on.

Doc. 56-1, pp. 12-13. The grievance counselor received and signed the grievance on March 16, 2011.

After the grievance counselor returned the grievance, McCaleb added the following amendment to the grievance:

> I'm writing a[n] amendment on this. On 3/17/2011 I seen (sic) the Nurses Practitioner and she said that [they're] not going to fix me, but I can put you in to see the Medical Director, and you can see what they say, but Nurses Practitioner said they will tell you the same thing that I told you.

Id. McCaleb submitted this grievance along with his first amendment to the grievance officer pursuant to step two of the grievance process. The grievance officer denied the grievance on March 21, 2011, and the chief administrative officer concurred on April 4, 2011. Doc. 50-2, p. 3. Thereafter, McCaleb added a second amendment to the grievance as follows:

> I'm writing a second amendment on this. I seen (sic) [D]octor [F]ahim he tried to push my intestines into my scrotum, making my hernia bigger. I asked him if he was going to fix me, and he said "no." He told me if it falls into my scrotum, he'll give me a jockstrap to give me support, so I'm not in any discomfort. I'm in

2

> discomfort as of right now and I have been since March 2, 2011. I [hired an] attorney for this matter, because by law your responsible for my well being and my health.

Doc. 50-2, p. 5. The Administrative Review Board ("ARB") received McCaleb's grievance, containing both the first and second amendments, on April 26, 2011, and denied the grievance on June 9, 2011. Doc. 56-1, pp. 12, 14.

On January 4, 2013, Defendants filed their motion for summary judgment arguing they are entitled to judgment as a matter of law because McCaleb failed to exhaust his administrative remedies. Specifically, Defendants argue the only fully exhausted grievance, #59-3-11, did not name Wexford and did not mention a conspiracy. Further, McCaleb only mentions Fahim in an undated amendment to his grievance which was not added until after the grievance officer and chief administrator had seen the grievance.

McCaleb filed his response to Defendants' motion for summary judgment in which he argues defendants are not entitled to judgment as a matter of law. McCaleb, however, does not deny that he excluded Wexford or Fahim from any step of the grievance process. He maintains that he did not know Fahim's name and was not required to provide it under IDOC regulations. Defendants replied (Doc. 57) to McCaleb's response. The R & R recommends this Court grant Defendants' motion for summary judgment. McCaleb objected to the R & R. In his objection, McCaleb admits that he added the amendments to his grievance after he had received the grievance back from the grievance counselor. The Court will now consider the R & R's recommendation.

2. **R & R Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P.

72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Because McCaleb filed an objection to the R & R, the Court will now undertake a *de novo* review of Defendants' motion for summary judgment

### 3. Analysis

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the

parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252. Accordingly, viewing the evidence in the light most favorable to McCaleb, the Court will now consider whether Defendants are entitled to judgment as a matter of law on the ground that McCaleb failed to exhaust his administrative remedies.

A prisoner may not file a § 1983 suit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006). In order to satisfy the exhaustion requirement of 28 U.S.C. § 1997e(a), a prisoner's grievance and appeal must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford*, 548 U.S. at 90, 93 (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits).

IDOC employs a three-step grievance process, in which the prisoner must first attempt to resolve a dispute with the grievance counselor. 20 Ill. Admin. Code § 504.810. Second, if the first step proves unsuccessful, the inmate must submit his grievance in writing to the grievance counselor, who then files a report with the Chief Administrative Officer. *Id*. The third step requires the inmate to submit the grievance to the Administrative Review Board ("ARB") in Springfield, Illinois. *Id*. Thus, IDOC prisoner grievances are not deemed fully exhausted until the prisoner receives a response from the ARB. In addition to following this three-step process,

IDOC requires grievances to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and *the name of each person who is the subject of or who is otherwise involved in the complaint*. . . . [or] as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(b) (emphasis added).

Viewing the evidence in the light most favorable to McCaleb, it is clear that McCaleb did not exhaust his administrative remedies with respect to Defendants. McCaleb does not mention defendant Wexford or refer to any type of conspiracy in grievance #59-3-11. McCaleb also does not identify defendant Fahim until his second amendment which was added after the second step of the grievance process. McCaleb is correct in his statement that the regulations do not require he identify a person by name; however, the regulations do require he provide "as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(b). McCaleb failed to provide *any* descriptive information relating to Fahim until his grievance was submitted to the ARB. From the undisputed facts it is clear that McCaleb did not comply with any of the grievance requirements with respect to Wexford and skipped the first and second steps of the grievance process with respect to Fahim. Accordingly, McCaleb did not exhaust his administrative remedies with respect to Defendants. For these reasons, Defendants are entitled to judgment as a matter of law.

### 4. Conclusion

After a *de novo* review, the Court **ADOPTS** the R & R (Doc. 58), **GRANTS** Defendants' motion for summary judgment (Doc. 49), and finds as follows:

- there is no genuine issue of material fact for an evidentiary hearing on Defendants' affirmative defense of failure to exhaust administrative remedies;

- Defendants have demonstrated by a preponderance of the evidence that McCaleb failed to exhaust his administrative remedies; and

- Fahim and Wexford are dismissed from this case.

Finally, as no claims remain pending, the Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** May 20, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
